VANDER TOORN v CITY OF GRAND RAPIDS

Docket No. 64623. Submitted November 1, 1983, at Grand Rapids.—
Decided March 5, 1984. Leave to appeal applied for.

Plaintiff, Leonard Vander Toorn, was dismissed from his employ-
ment at the Blandford Nature Center, a part of the Grand
Rapids Public Museum. Plaintiff invoked the procedures pro-
vided in an employee handbook for review and appeal of a
personnel action where the employee believes he has been
treated inequitably. Ultimately, plaintiff's discharge was upheld
after a hearing before the Art and Museum Commission. Plain-
tiff then brought an action in Kent Circuit Court against the
City of Grand Rapids and Mary J. Dockeray, his immediate
supervisor, alleging wrongful discharge and several other
claims. The circuit court, George R. Cook, J., held that the
action was controlled by Const 1963, art 6, § 28 and that,
therefore, plaintiff's claim was not entitled to be submitted to a
jury and that review was limited to a determination of whether
the commission's decision was supported by competent, mate-
rial, and substantial evidence on the record. The court found
that the decision was so supported, and affirmed the commis-
sion's decision, dismissing all of plaintiff's claims. Plaintiff
appealed. *Held:*

1. The standard of review set forth in Const 1963, art 6, § 28,
applies to findings of judicial or quasi-judicial administrative
agencies. The Art and Museum Commission was not authorized
by either the city charter or local ordinance to act as a quasi-
judicial agency having the responsibility of adjudicating claims
brought by any city employees. Therefore, the scope of review
applicable to its decision is not limited by Const 1963, art 6,
§ 28, and the trial court erred in finding that review was so
limited.

2. While an employer may provide a procedure for resolution

REFERENCES FOR POINTS IN HEADNOTES
[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 275.
[2] 2 Am Jur 2d, Administrative Law § 556 *et seq.*
[3] 48A Am Jur 2d, Labor and Labor Relations § 1896.
[4] 16A Am Jur 2d, Constitutional Law §§ 819, 855, 858, 859.

of disputes over whether cause to discharge existed, if that procedure is to preclude submission of a wrongful discharge claim to a jury and is to be subject only to limited judicial review then the dispute must be resolved by some impartial arbiter. Here, the commission, which made the final decision to discharge the plaintiff, also actually participated in the initial decision. The commission, then, was not an impartial arbiter such that its final decision could be precluded from review by a jury. The trial court erred in dismissing plaintiff's claims.

Reversed and remanded.

1. ADMINISTRATIVE LAW — LOCAL COMMISSIONS — SCOPE OF AUTHOR-
ITY.

The powers of a local government board or commission are limited to those provided by the city charter or local ordinance; a municipal officer, board, commission, or the like may be authorized by law to conduct hearings on the removal or suspension of employees.

2. ADMINISTRATIVE LAW — REVIEW — LOCAL COMMISSIONS — SCOPE
OF REVIEW.

Judicial review of a decision of a local commission which has not been authorized by city charter or local ordinance to function as a judicial or quasi-judicial administrative agency is not limited only to a determination of whether the decision was supported by competent, material, and substantial evidence on the record (Const 1963, art 6, § 28).

3. LABOR RELATIONS — DISCHARGE OF EMPLOYEE — REVIEW — IMPAR-
TIAL ARBITER.

An employer, in conferring upon an employee the right to be discharged only for cause, may also provide a procedure for resolution of disputes over whether cause to discharge existed; the decision reached under that procedure might preclude submission to a jury of a wrongful discharge claim and be ·subject only to limited judicial review, but only where the dispute is resolved by an impartial arbiter.

4. CONSTITUTIONAL LAW — DUE PROCESS — IMPARTIAL DECISION-
MAKER.

The due process right to an impartial decisionmaker is violated where the decisionmaker sits in review of a decision in which it participated.

*Christine A. Gara,* and *Willingham, Coté, Han-*

*slovsky, Griffith & Foresman, P.C.* (by *Frederick M. Baker, Jr.*), for plaintiff.

*G. Douglas Walton,* Deputy City Attorney, for defendants.

Before: MacKenzie, P.J., and J. H. Gillis and T. C. Megargle,* JJ.

Per Curiam. This case arises from plaintiff's discharge from his position as building maintenance supervisor at the Blandford Nature Center, which is part of the Grand Rapids Public Museum. Plaintiff was a non-union, non-civil service employee of defendant City of Grand Rapids and his immediate supervisor was defendant Mary Jane Dockeray, Director of Blandford Nature Center. Plaintiff appeals as of right from an order of the circuit court dismissing all counts of his amended complaint. We reverse.

One of the counts alleged in plaintiff's amended complaint was that of breach of contract by defendant city in wrongfully terminating plaintiff without just cause, in contravention of defendant city's "Employee Handbook", which provides that, upon "successfully completing the probationary period, you may be discharged or demoted only for cause". This claim of plaintiff is based on *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). In addition to defendant city's "Employee Handbook", the museum had its own handbook entitled "Museum Staff Handbook", which set forth a review and appeal procedure under which an employee "who believes he has received inequitable treatment" could seek relief. Upon receiving notice of his discharge, plaintiff

---

* Circuit judge, sitting on the Court of Appeals by assignment.

invoked this procedure. "Step 1" of the procedure involved discussion with his immediate supervisor, and "Step 2" involved review by the museum director; both steps were resolved unfavorably to plaintiff, finding that his termination was based on just cause. Plaintiff then invoked "Step 3" of the procedure, which is described in the "Museum Staff Handbook" as follows:

"*Step 3:* If the employee is not satisfied with the settlement of the problem, he may ask, in writing, for a review by a Grievance Committee. The Grievance Committee of five people will be elected annually at the beginning of each fiscal year at a meeting of Museum employees excluding the Director and Assistant Director.

"The Grievance Committee will hold interviews with and obtain written statements from all parties concerned.

"This committee, serving as an impartial group will make recommendations for a satisfactory solution based upon their investigation within eight working days of the time of receipt of the request from the employee. These recommendations shall be forwarded to the employee, the Museum Director, and the Art and Museum Commission for final action.

"If the employee is not satisfied with the recommendation of the Grievance Committee, he may ask, in writing, for a review by the Art and Museum Commission within five working days, or he may ask for a hearing before the Commissioners at which time the employee and one representative of his choice will be allowed to defend his point of view. The Commissioners may call any additional personnel involved in the case to present their side.

"If the Grievance Committee wishes to have the case reviewed by the Art and Museum Commission, they may so request in writing.

"In any case, all information, written statements, and documents must be made available to the Art and Museum Commission.

"If the problem involves legal advice, a written opinion must be obtained from an attorney.

"Disposition of the case will be made by the Art and Museum Commission at its next regular meeting, or as soon as practicable."

The grievance committee, consisting of other museum employees, issued a report which was in large part favorable to plaintiff. The committee recommended that the Art and Museum Commission more fully investigate the circumstances surrounding plaintiff's termination and recommended as possible solutions that plaintiff be given a job in another city department or be allowed to retire without loss of benefits. After a hearing before the Art and Museum Commission, however, the commission found that there was just cause for discharge and issued a final decision terminating plaintiff's employment.

The circuit court concluded that plaintiff was not entitled to submit his *Toussaint* wrongful discharge claim to a jury since the Art and Museum Commission's final decision to terminate plaintiff was not subject to *de novo* review. The court found, relying on *Viculin v Dep't of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971), that the decision to terminate was that of an administrative agency to which Const 1963, art 6, § 28 applied, and treated plaintiff's complaint as one seeking an order of superintending control under which the scope of review was limited to determining whether the commission's decision was "supported by competent, material and substantial evidence on the whole record" as provided under Const 1963, art 6, § 28. The court concluded that plaintiff's discharge was supported by competent, material, and substantial evidence, and affirmed the commission's decision. The court then issued

an order dismissing plaintiff's wrongful discharge count and also dismissing all of plaintiff's other counts, finding that its affirmance of the commission's decision to terminate was dispositive of plaintiff's other counts as well. We question the court's determination that its affirmance of the commission's decision to discharge necessarily disposed of virtually all the other claims set forth in plaintiff's additional counts for negligence, retaliatory discharge, discrimination, promissory estoppel, detrimental reliance, interference with contractual relationship and prospective economic opportunities, libel and slander, and intentional infliction of mental distress. But, moreover, we find that the underlying reason for the court's dismissal of plaintiff's complaint, that the commission's decision to discharge plaintiff was subject to only limited judicial review, was error.

Defendants argue that the court properly treated the Art and Museum Commission's final decision to terminate plaintiff as that of an administrative agency for which the standard of review is the minimum review provided in Const 1963, art 6, § 28. We cannot agree. That constitutional provision states in pertinent part as follows:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. * * *" Const 1963, art 6, § 28.

The threshold question is whether the Art and

Museum Commission is a judicial or quasi-judicial administrative·agency existing under the constitution or by law. We find that it is not, and that therefore Const 1963, art 6, § 28 is inapplicable.

In *Viculin, supra,* p 385, relied on by the circuit court and by defendants on appeal, the Supreme Court held that § 28 applied to final decisions of the Michigan Civil Service Commission. Defendants also direct our attention to *Montiy v East Detroit Civil Service Bd,* 54 Mich App 510, 513; 221 NW2d 248 (1974), where this Court noted that the standard of review applicable to the decision of the Civil Service Board of East Detroit was that provided in § 28. However, the present case is distinguishable. A municipal officer, board, commission, or the like may be authorized by law to conduct hearings on the removal or suspension of employees. 4 McQuillin, Municipal Corporations (3d ed), § 12.259, p 392. The powers of a local government board or commission are limited to those provided by the city charter or local ordinance. *Division 26 of Amalgamated Ass'n of Street, Electric Railway & Motor Coach Employees of America v Detroit,* 330 Mich 195, 212-213; 47 NW2d 70 (1951); *Hubbard v Board of Trustees of Dearborn Retirement System,* 319 Mich 395, 399; 29 NW2d 779 (1947). Here, the Art and Museum Commission was not authorized, either by the city charter or ordinance, to act as a quasi-judicial administrative agency having the responsibility of adjudicating claims brought by museum or any other city employees.

Defendants cite the following provision of the city charter in support of their assertion that the commission is a quasi-judicial administrative agency:

"244. Employees. Sec. 4. It shall be the duty of the

Board [of Art and Museum Commissioners] to appoint
and employ such employees as the economical and
efficient service of this department shall require and to
prescribe and fix their duties and compensation."

However, we fail to perceive in this provision any
intention of the city charter's framers that the Art
and Museum Commission function as a quasi-judi-
cial administrative agency. In contrast, the Michi-
gan Civil Service Commission involved in *Viculin,
supra,* is vested by the State Constitution with
plenary power to "make rules and regulations
covering all personnel transactions, and regulate
all conditions of employment", Const 1963, art 11,
§ 5. Also contrast *Goodfellow v Detroit Civil Ser-
vice Comm,* 312 Mich 226; 20 NW2d 170 (1945)
(limited judicial review of decision of defendant
commission, which under city charter must hear
appeals by discharged employees); *In re Freder-
icks,* 285 Mich 262; 280 NW 464 (1938) (limited
judicial review of decision of city police and fire
commission, authorized by charter and statute to
conduct hearings on removal of employees). While
the above-quoted provision gives the Art and Mu-
seum Commission authority to decide whom to
employ and to fix the compensation and duties of
museum employees, it does not empower the com-
mission to hear appeals or hold hearings to adjudi-
cate employee grievances, nor does it give the
commission plenary regulatory and rulemaking
powers.

We conclude that the commission was not func-
tioning as a quasi-judicial administrative agency
under the city charter or ordinance when it issued
its final decision to discharge plaintiff, and there-
fore the limited scope of review provided in Const
1963, art 6, § 28 is inapplicable. The commission
was, however, functioning as a self-designated deci-

sionmaking body, and so we must now determine whether its decision to discharge plaintiff made in that capacity precludes plaintiff from submitting his claim of wrongful discharge to a jury.

In recognizing an employee's cause of action for wrongful discharge based on an employer's breach of an oral or written policy statement that the employee could be discharged only for just cause, the Court in *Toussaint, supra,* p 624, explained:

"Additionally, the employer can avoid the perils of jury assessment by providing for an alternative method of dispute resolution. A written agreement for a definite or indefinite term to discharge only for cause could, for example, provide for binding arbitration on the issues of cause and damages."

However, the Court also noted that the "promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the discharge". *Toussaint, supra,* p 621. The principle we derive from these statements by the Court in *Toussaint, supra,* is that an employer, in conferring upon its employee the right to be discharged only for cause, might also provide a procedure for resolution of disputes over whether cause to discharge existed, and the decision reached under that procedure might preclude submission to a jury of a wrongful discharge claim and be subject only to limited judicial review, but only where the dispute is resolved by some impartial arbiter.

In the present case, the final decision to discharge was made by the Art and Museum Commission under the dispute resolution procedure set forth in the "Museum Staff Handbook". We find that the commission's decision was not that of an impartial arbiter since the commission had partici-

pated in the initial decision to terminate plaintiff's employment. Plaintiff was notified of his discharge by the museum director, W. D. Frankforter, who sent plaintiff a letter dated January 30, 1980. The minutes of a meeting of the Art and Museum Commission held December 19, 1979, include the following:

"(1) Nature Center

"1.1 Staff: Director Frankforter reviewed the meeting he had had with Mr. Len Van Der Toorn and Mr. Andy VanderVeen. After considerable discussion, it was suggested that Mr. Van Der Toorn have counseling but when an appointment was set up for him, he refused to go. The only two alternatives which remain are: (1) Early retirement, or (2) dismissal. It was suggested that Mr. Frankforter talk with Mr. Van Der Toorn's wife, and that nothing be decided or done until after the first of the year."

Also, museum director Frankforter testified at the hearing on plaintiff's discharge held before the Art and Museum Commission as follows:

"*Q*. Now, at this same place in your record, 12-19 notation, you indicate that there are only two alternatives. Now, are these the alternatives that the board gave you, or is this what you're presenting to the board?

"*A*. Well, I think it was the conclusion of the board after my presentation concerning the past two years, and the statement that Mr. Van Der Toorn chose not to have counseling, then they suggested these are the alternatives.

\* \* \*

"*Q*. Okay, next notation, January 3rd, 1980, you called Mary Jane Dockeray, we have got suggesting early retirement to Len?

"*A*. Right.

"*Q.* At that point in time, had you decided that she was not a good person to discuss this with Len?

"*A.* She is a supervisor, but she's not the one who made the decision to either retire or terminate him. That was a decision made in the Art and Museum Commission meeting, which again is the governing body."

Defendants argue that the commission did act as an impartial arbiter in rendering the final decision upholding plaintiff's discharge since the commission had earlier merely acted in an investigative role and was familiar with the facts of the case, citing *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712 (1975), and *Hortonville Joint School Dist No 1 v Hortonville Education Ass'n,* 426 US 482; 96 S Ct 2308; 49 L Ed 2d 1 (1976). In *Withrow, supra,* the Supreme Court found no due process violation where the licensing board first conducted an investigation into whether the licensee had engaged in proscribed conduct, and later decided to temporarily suspend the license and to initiate an action for license revocation, finding that probable cause for revocation existed; the Court explained that "the combination of investigative and adjudicative functions does not, without more, constitute a due process violation". *Withrow, supra,* 421 US 58. In *Hortonville, supra,* the school board had been engaged in collective bargaining with the teachers, the teachers then went on strike, and the board conducted hearings on whether the teachers should be disciplined; the Court held that due process did not prevent the board from disciplining the teachers merely because the board was familiar with the facts via its earlier bargaining activities. *Hortonville, supra,* 426 US 493.

However, neither *Withrow* nor *Hortonville* dis-

turbed the principle that the due process right to an impartial decisionmaker is violated where the decisionmaker sits in review of a decision in which it participated. *Withrow, supra,* p 58, fn 25; *Goldberg v Kelly,* 397 US 254, 271; 90 S Ct 1011; 25 L Ed 2d 287 (1970); *Crampton v Dep't of State,* 395 Mich 347, 353-355; 235 NW2d 352 (1975). In the instant case, as reflected by the above-quoted excerpts from the commission's minutes and Frankforter's testimony, the commission was not merely familiar with the facts and did not merely make an investigation and some preliminary determination, but rather actually participated in the decision to terminate plaintiff's employment, the same decision the propriety of which it later reviewed. Hence, we conclude that the commission's final decision upholding plaintiff's discharge as based on just cause was not that of an impartial arbiter so as to preclude a jury's assessment of whether just cause existed under *Toussaint, supra,* p 624.

In sum, we find that the circuit court erred in treating the commission's decision upholding plaintiff's discharge as that of an administrative agency subject only to limited judicial review, and further that the commission's decision was not that of an impartial arbiter so as to preclude jury consideration under *Toussaint, supra.* Since the court dismissed plaintiff's count of wrongful discharge and all the other counts in plaintiff's complaint because of its erroneous affirmance of the commission's final decision to discharge based on the limited scope of review applied by the court, we reverse that order dismissing plaintiff's complaint in its entirety. Upon presentation of the necessary proofs, plaintiff is entitled to submit to a jury his *Toussaint*-based claim of wrongful discharge, as well as the other claims set out in his

additional counts for negligence, retaliatory discharge, discrimination, promissory estoppel, detrimental reliance, interference with contractual relationship and prospective economic opportunities, libel and slander, and intentional infliction of mental distress. Whether and to what extent some of plaintiff's claims may overlap with his *Toussaint*-based wrongful discharge claim, we leave to resolution on remand.

Reversed and remanded for proceedings consistent with this opinion; no costs, a question of public significance being involved.