MICHIGAN RESTAURANT ASSOCIATION v CITY OF MARQUETTE

Docket No. 217232. Submitted October 10, 2000, at Marquette. Decided March 13, 2001, at 9:00 A.M Leave to appeal sought.

The Michigan Restaurant Association and others brought an action in the Marquette Circuit Court against the city of Marquette to challenge the validity of a Marquette city ordinance that bans smoking in restaurants. The court, John R. Weber, J., granted summary disposition for the plaintiffs, ruling that the ordinance is invalid because it conflicts with and is preempted by the Public Health Code, MCL 333.1101 *et seq.* The defendant appealed.

The Court of Appeals *held*:

1. Subsection 12905(2) of the Public Health Code, MCL 333.12905(2), clearly allows a food service establishment to designate a portion of its seating capacity as seating for smokers. The ordinance at issue directly conflicts with, and is preempted by, § 12905.

2. The ordinance is also preempted by § 12915 of the Public Health Code, MCL 333.12915, which preempts local ordinances that, like the ordinance at issue here, conflict with provisions of part 129 of the Public Health Code, which governs food service sanitation.

Affirmed.

HOEKSTRA, J., *concurring in part and dissenting in part, stated that* the ordinance in this case is preempted by § 12915 of the Public Health Code, but not by § 12905. The Public Health Code generally preempts enactments of local governments only when local acts are less stringent than those required by the code. Section 12905 is intended to guarantee nonsmoking, not smoking, seating space in food service establishments, and because the ordinance at issue is more stringent than § 12905, the ordinance is not preempted by § 12905.

MUNICIPAL CORPORATIONS — ORDINANCES — STATE STATUTES — PREEMPTION.

A municipality is precluded from enacting an ordinance if the ordinance is in direct conflict with a state statutory scheme, or if the state statutory scheme preempts the ordinance by occupying the field of regulation that the municipality seeks to enter, to the exclu-

sion of the ordinance, even where there is no direct conflict between the two schemes of regulation.

*Clancey, Hansen, Chilman & Greenlee, P.C.* (by *Walter L. Hansen*), for the plaintiffs.

*Warner Norcorss & Judd LLP* (by *J. A. Cragwall, Jr.,* and *John J. Bursch*), for the defendant.

Amici Curiae:

*Varnum, Riddering, Schmidt & Howlett LLP* (by *Peter Armstrong*), for Michigan Municipal League.

*Varnum, Riddering, Schmidt & Howlett LLP* (by *Elizabeth J. Fossel*), for American Lung Association of Michigan; American Cancer Society, Great Lakes Division, Inc.; and American Heart Association, Midwest Affiliate.

*Reed, Stover & O'Connor, P.C.* (by *Richard D. Reed* and *Patricia R. Mason*), for Americans for Nonsmokers' Rights.

Before: GRIBBS, P.J., and M. J. KELLY and HOEKSTRA, JJ.

M. J. KELLY, J. This case involves an amendment of a Marquette city ordinance. The amendment placed a total ban on smoking in restaurants. Plaintiffs argued that the amendment was in conflict with a state statute governing nonsmoking seating in food service establishments and sought to regulate an area already preempted by state law. The trial court agreed and granted summary disposition in favor of plaintiffs under MCR 2.116(C)(10). Defendant appeals as of right. We affirm.

Defendant argues that the Michigan statute mandating a minimum number of nonsmoking seats in food service establishments does not preempt the ordinance prohibiting smoking in restaurants and that the Marquette ordinance is not in conflict with state law because it is *more stringent* than the state statutory standards regarding nonsmoking sections in restaurants. We disagree. Statutory interpretation is a question of law that is considered de novo on appeal. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

The state statute in question, MCL 333.12905(2) mandates the maximum number of smoking seats a food service establishment may maintain:

> Subject to subsection (3), a food service establishment with a seating capacity of fewer than 50, whether or not it is owned and operated by a private club, and a food service establishment that is owned and operated by a private club may designate up to 75% of its seating capacity as seating for smokers. A food service establishment with a seating capacity of 50 or more that is not owned or operated by a private club may designate up to 50% of its seating capacity as seating for smokers. A food service establishment that designates seating for smokers shall clearly identify the seats for nonsmokers as nonsmoking, place the seats for nonsmokers in close proximity to each other, and locate the seats for nonsmokers so as not to discriminate against nonsmokers.

The ordinance at issue in this case places a complete ban on smoking in restaurants in the city of Marquette. Marquette, as a Michigan home rule city, is subject to the constitution and general laws of this state. *People v Llewellyn*, 401 Mich 314, 321, n 1; 257 NW2d 902 (1977).

A municipality is precluded from enacting an ordinance if
1) the ordinance is in direct conflict with the state statutory
scheme, or 2) if the state statutory scheme pre-empts the
ordinance by occupying the field of regulation which the
municipality seeks to enter, to the exclusion of the ordi-
nance, even where there is no direct conflict between the
two schemes of regulation. [*Id.* at 322.]

In order to determine whether the Marquette ordi-
nance is in conflict with a state statute, this Court
must examine whether the ordinance banning smok-
ing in restaurants is inconsistent with or an extension
of what the Legislature intended. In essence, to deter-
mine whether a direct conflict exists, this Court must
consider whether the ordinance prohibits what state
law permits. *Detroit City Council v Stecher*, 430 Mich
74, 89; 421 NW2d 544 (1988), citing *Builder's Ass'n v
Detroit*, 295 Mich 272, 277; 294 NW 677 (1940); *Miller
v Fabius Twp Bd*, 366 Mich 250, 258; 114 NW2d 205
(1962).

In *Miller*, a determining factor for deciding whether
a local ordinance was preempted by state law was
whether the area regulated by the ordinance was
local in nature as opposed to a general statewide
issue. The local ordinance in *Miller* prohibited water
skiing between 4 P.M. and 10 A.M., but the state had
passed a statute prohibiting water skiing between one
hour after sunset and one hour before sunrise. *Miller,
supra* at 259. Our Supreme Court held that the ordi-
nance was not preempted by state statute because
the local ordinance added to the state regulation and
was not in conflict with state law. *Id.* The *Miller*
Court reasoned that certain problems affecting spe-
cific inland lakes differ, "such as the number of boat
users on the lake; the amount of fishing on the lake;

the congestion and conflict between fishermen and water skiers; the location of the lake to densely populated areas," and thus regulation of inland lakes was an area that logically could be regulated by local ordinances because the character of many of these problems was local in nature and not statewide. *Id.* at 259. This is not the case with the Marquette ordinance. Smoking is a statewide issue that is not local in character, unlike regulations involving inland lakes.

To determine whether a conflict exists, this Court must also ascertain if the ordinance is merely an extension of state law. *Id.* In *Miller*, the local ordinance increased the time when water skiing was prohibited rather than prohibiting water skiing on certain lakes altogether. *Id.* at 258-259. The *Miller* Court analogized this principle to traffic ordinances of a city and the state traffic statutes because densely populated areas of a city with a large number of cars require greater regulation than rural communities and thus the extension of state regulation by local ordinance is appropriate. *Id.* at 259. The Marquette ordinance does something more than expanding the state statute to make it more stringent. The ordinance creates a general prohibition on smoking as opposed to, for example, creating a higher percentage of non-smoking tables.

In *Detroit v Qualls*, 434 Mich 340, 363; 454 NW2d 374 (1990), our Supreme Court stated that whether the problem to be regulated was local in character determined whether the area was preempted by state law. In *Qualls*, the defendant operated a retail fireworks business in the city of Detroit. *Id.* at 345. The city of Detroit brought suit against the defendant for forfeiture of the fireworks and argued that the defen-

dant's license only permitted him to sell and store fireworks in amounts of one hundred pounds or less. *Id.* The defendant argued that the city ordinance conflicted with state law, which did not place a limit on fireworks. *Id.* Our Supreme Court held that the local ordinance and state law were not in conflict because the local ordinance merely went further than state law in its prohibition. *Id.* at 363-364. *Qualls* is distinguishable from the present case because the state law in *Qualls* was less specific. In *Qualls*, the state law regulating the amount of fireworks a retailer may have on the premises only required that it be a reasonable amount. *Id.* What constituted a reasonable amount could be determined by the local municipalities depending on the population density, numbers of retailers, and specific dangers. This type of regulation and what is reasonable based on the danger to the area is obviously best assessed at the local level. Again, this type of regulation logically differs from smoking regulations because the danger of secondhand smoke is not specific to the Marquette area.

Defendant argues that the nonsmoking ordinance is not preempted because MCL 333.12915 does not preempt every local ordinance regulating food service establishments, but only those in conflict with the state health code. However, this argument fails because MCL 333.12905 directly addresses smoking and nonsmoking seats in restaurants by requiring a certain number of seats to be nonsmoking seating. "[W]here the state law expressly provides that the state's authority to regulate a specified area of the law is to be exclusive, there is no doubt that municipal regulation is preempted." *Llewellyn, supra* at 323,

citing *Noey v Saginaw*, 271 Mich 595; 261 NW2d 88 (1935).

MCL 333.12915 states:

> A county, city, village, or township shall not regulate those aspects of food service establishments or vending machines which are *subject to regulation under this part* except to the extent necessary to carry out the responsibility of a local health department pursuant to sections 12906 and 12908. This part shall not relieve the applicant for a license or a licensee from responsibility for securing a local permit or complying with applicable local codes, regulations, or *ordinances not in conflict with this part.* [Emphasis added.]

The difficulty in assessing the meaning of the statute lies in reconciling the first and second sentences of MCL 333.12915. When reading the first part, prohibiting municipalities from enacting ordinances in areas "subject to state regulation," in conjunction with the second part, allowing "local codes, regulations or ordinances not in conflict" with the health code, it is clear that to withstand this statute, a local ordinance must both address an area not preempted by state statute and be in accordance with the state statute. The Marquette ordinance falls short of both prongs of this standard because it involves an area already specifically covered by state statute and it directly opposes what the state statute specifically allows.

Defendant contends that the statutes should be construed liberally. Defendant argues that because the Marquette ordinance merely expanded the state regulation of smoking in food service establishments, it is not in conflict with state law and is therefore not preempted. Defendant further avers that legislative history should be taken into account when deciding

this issue and that legislative intent can be gleaned from the 1993 amendment of the statute that increased the number of nonsmoking tables required in food service establishments. Legislative history and statutory construction might be more helpful if there were not already a statute with specific language directly on point. MCL 333.12905 directly addresses the issue whether restaurant owners have discretion to have smoking areas in restaurants, and it provides that they do. "If the language used is clear, then the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written." *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997), citing *Hiltz v Phil's Quality Market*, 417 Mich 335, 343; 337 NW2d 237 (1983). "When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore, precluded." *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). "Once a statute has been declared unambiguous on its face, there is no room for further construction; legislative intent must be gleaned from the clear and explicit words of the statute." *Sam v Balardo*, 411 Mich 405, 418; 308 NW2d 142 (1981). Here, the language is clear and judicial construction is not necessary. The trial court correctly concluded that the ordinance is in direct conflict with a food service establishment's right under MCL 333.12905(2) to designate a certain percentage of its seating capacity as seating for smokers. The question whether there should be a total ban on smoking in restaurants must be left to the Legislature.

Affirmed.

Gribbs, P.J., concurred.

HOEKSTRA, J, *(concurring in part and dissenting in part)*. Because MCL 333.12915 (hereinafter § 12915) requires preemption of defendant's smoking ordinance, I join with the majority in affirming the decision of the trial court. Section 12915 of the Public Health Code provides:

> A county, city, village, or township shall not regulate those aspects of food service establishments or vending machines which are subject to regulation under this part except to the extent necessary to carry out the responsibility of a local health department pursuant to sections 12906 and 12908. This part shall not relieve the applicant for a license or a licensee from responsibility for securing a local permit or complying with applicable local codes, regulations, or ordinances not in conflict with this part.

In the first sentence, this statute plainly states that the provisions contained in this part preempt any attempts at further regulation by local governmental entities. MCL 333.12905 (hereinafter § 12905), which is a provision of the part controlled by § 12915, regulates the same area as that addressed by defendant's smoking ordinance. Therefore, defendant's ordinance is preempted.

Defendant argues that this reading of § 12915 effectively renders the second sentence of this section meaningless. This argument is without merit because the second sentence addresses only local enactments "not in conflict with this part." Because this part of the Public Health Code does not occupy the entire field of regulations applicable to food service establishments, the second sentence has meaning in relation to those areas that are not addressed.

Respectfully, I disagree with the analysis of the majority with regard to whether § 12905 alone

preempts defendant's smoking ordinance. Generally, a provision of the Public Health Code preempts enactments of local governmental entities only when the local acts are less stringent than those required by the state's health code. MCL 333.1115. Because I read defendant's smoking ordinance to be more stringent than that of the state, I conclude that it is not preempted by § 12905. Plaintiffs' argument to the contrary begins with the premise that § 12905 guarantees that smoking space be made available, but allows individual food service establishments to reduce that space in their discretion. Plaintiffs misinterpret the plain intent of the statute. Section 12905 is intended to guarantee nonsmoking, not smoking, space. This is apparent from the language in subsection 1, designating all public areas to be nonsmoking except those designated otherwise, in subsection 2, where the emphasis is on the rights of nonsmokers, and in subsection 3, requiring a minimum area for nonsmoking regardless of how the rules are interpreted. The subsections are designed to ensure that nonsmoking areas exist within food service establishments. Accordingly, because defendant's smoking ordinance provides for more, not less, nonsmoking space, it is not preempted by § 12905.